FLOTILL PRODUCTS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLOTILL SALES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31942, 32302. Filed April 30, 1956.

*Willard C. Mills, Esq.*, for the petitioner in Docket No. 31942, and *Joseph Getz, C. P. A.*, for the petitioner in Docket No. 32302.

*Aaron S. Resnik, Esq.*, for the respondent.

**230**

TIETJENS, *Judge:* The first part of this Opinion will pertain to Flotill Products, Incorporated, Docket No. 31942. The term "petitioner" as herein used will refer to that company. Respondent determined that Flotill Products, Inc., qualifies for excess profits tax relief under section 722 (b) (4)—

by virtue of your incorporation during the base period (1939), coupled with a change in the character of the business continued by the new corporation, as evidenced by the change in management policies subsequent to acquisition of undivided control by the new ownership in 1939.

Respondent has made a partial allowance of petitioner's claims for relief based on a constructive average base period net income of $106,576.06. Petitioner contends that it is entitled to a constructive average base period net income of $247,000.

Petitioner complains that in computing its average base period net income in this manner respondent has failed to apply "or properly to apply" the 2-year push-back rule of section 722 (b) (4). Respondent insists to the contrary, that he has applied, and properly applied, the push-back rule. He refers to the ruling of the Excess Profits Tax Council that—

In view of all of the foregoing factors, the Council panel has decided that the claimant's earnings from its actual pack in 1939 comprises a fair and just approximation of the amount which might have been earned at the end of the base period if the qualifying changes had occurred two years earlier.

Respondent, in his brief, refers to it as "a mere coincidence of fact" that the actual earnings for the last year of the base period were considered to be the same as the level of earnings based on the actual length of the development period after the changes.

As pointed out, respondent recognizes that in 1939 there were qualifying changes in the character of the business under section 722 (b) (4). These changes were inaugurated by Tillie Weisberg when she acquired the controlling interest in the petitioner corporation in March 1939; in fact, some of the changes were begun late in 1938, when it became evident that she would acquire the Del Gaizos' stock interests. She increased the contracted tomato acreage with the farmers and began installing new, improved equipment and generally modernizing the plant. She increased the sales activities and established new outlets for petitioner's products. The contract acreage was increased from 1,650 acres in 1938 to approximately 2,712 acres in 1939, and the 1940 acreage was further increased to 5,165 acres. The entire 1939 pack, which was almost twice the 1938 pack, had been sold by the middle of November, about the end of the 1939 packing season. At December 31, 1939, and at the close of petitioner's base period, August 31, 1940, there was a well-established market for the pear-shaped tomatoes and tomato paste which the petitioner was producing, and the prospects were for further market expansion.

In view of the evidence in this case, we think respondent's determination of the amount representing a fair and just amount as petitioner's average base period net income as recited in our Findings of Fact was too low. At the same time, petitioner's proposed reconstruction results in too high a figure in this respect. From our study of the evidence, we are convinced that because of the short period for development under the changed conditions petitioner's earnings had not reached their normal level by the end of the base period. After

carefully considering the whole record and petitioner's proposed reconstruction of base period earnings, we have concluded that a fair and just amount representing petitioner's average base period net income is $140,000.

Petitioner concedes that its constructive average base period net income should be adjusted for taxes in its excess profits credit for 1941.

We turn now to Flotill Sales Corporation, Docket No. 32302, and hereinafter the term "petitioner" will be used to refer to that company.

Petitioner claims excess profits tax relief for the taxable year ending August 31, 1943, under section 722 (c).[1] It contends that in computing its excess profits tax credit for that year it was deprived of the use of its base period income experience under section 713, Internal Revenue Code of 1939, by section 740, and that the credit based on invested capital is an inadequate standard of normal earnings because the sales contract with Flotill Products, California, which was the principal source of its earnings, was an intangible asset not includible in invested capital. Respondent has computed petitioner's excess profits credit under section 713 (the income method) for 1941 and 1942 in the respective amounts of $11,422.01 and $12,964.19, and under section 714 (the invested capital method) for 1943 in the amount of $4,934.95, in accordance with petitioner's returns for those years.

Section 722 (c) provides relief only for corporations "not entitled to use the excess profits credit based on income pursuant to section 713." Section 712 provides "a domestic corporation which was in existence before January 1, 1940" must compute its excess profits credit under section 713 (income method) or section 714 (invested capital method), whichever results in the lesser tax.

Respondent takes the position that petitioner was "in existence" during the entire base period and is therefore not qualified for relief under section 722 (c). Petitioner does not deny that it was in existence prior to January 1, 1940, but contends that it was deprived of

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

(1) the business of the taxpayer is of a class in which intangible assets not includible in invested capital under section 718 make important contributions to income,

(2) the business of the taxpayer is of a class in which capital is not an important income-producing factor,

\* \* \* \* \* \* \*

In such case for the purposes of this subchapter, such taxpayer shall be considered to be entitled to use the excess profits credit based on income, using the constructive average base period net income determined under subsection (a). For the purposes of section 713 (g) and section 743, the beginning of the taxpayer's first taxable year under this subchapter shall be considered to be that date after which capital additions and capital reductions were not taken into account for the purposes of this subsection.

the right to compute its excess profits credit under section 713 by reason of section 740,[2] Internal Revenue Code of 1939.

Section 740 deals with methods for computing excess profits credit based on income where, under certain circumstances, there has been a change in ownership of the business. So far as here material, it requires the apportionment of the base-period income experience of the "acquiring" corporation and the "component" corporation. It does not deny the component corporation (in this case, Flotill Sales) the use of its base period experience but does set a limitation on such use. We may assume, as petitioner here contends, that under section 740 (c) and by reason of the transfer of this business and assets to Flotill Products, California, in August 1939, and the fact that it had no income thereafter during the base period, it was deprived, in computing its excess profits tax for 1943, of the credit based on its income experience which it had used and which respondent allowed for the prior excess profits tax years 1941 and 1942.

As we construe the statute, the right to relief under section 722 (c) is not dependent upon the application of any of the provisions of section 740. Section 722 (c) provides that—

The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits * * *

Section 712 (a) provides that—

In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. * * *

Section 713 provides for the computation of such credit under the income method and section 714 under the invested capital method.

Thus, only a taxpayer not entitled to use the income method under section 713 is eligible for relief under section 722 (c), and the sole test for determining that right is whether the taxpayer was "in existence before January 1, 1940."

Since petitioner admittedly was in existence at least up to August 18, 1939, it meets the requirements of section 713 and it, therefore, fails to qualify for relief under section 722 (c). We have heretofore said

---

[2] SEC. 740. DEFINITIONS.

(c) Income of Certain Component Corporations Not Included.—* * *

* * * * * *

For the purposes of section 742, in the case of a corporation which is a component corporation in a transaction described in subsection (a), in computing for any taxable year the Supplement A average base period net income of the acquiring corporation in such transaction or of a corporation of which such acquiring corporation becomes a component corporation, no account shall be taken of the excess profits net income of such component corporation for any period beginning with the day after such transaction.

that a corporation is "in existence" for the purpose of section 712 (a) from the day it is created until its corporate rights are legally terminated. *Eveready Loan Co.*, 2 T. C. 1035. We said in that case:

Congress, in the exercise of its sovereign power to tax, might have set forth, in most unequivocal language, the test to be applied in ascertaining when a domestic corporation was "in existence" for the purposes of section 712 (a). It would have been a simple matter to have specifically made, beyond any question whatever, the actual conducting of business the test. Such requirement would have been binding and conclusive, declarations in state corporation laws regarding the date from which "existence" runs to the contrary notwithstanding. *Rudolph Wurlitzer Co.* v. *Commissioner*, 81 Fed. (2d) 971. * * *

Corporations are creatures of law. They have no being save at government will and have no powers apart from those authorized by grant or implied therefrom. They come into existence, in a legal sense, at the moment the conditions precedent thereto, as determined by the statute under which they are formed, are complied with. They are thereafter "in existence" until their life is terminated. * * *

For the reasons stated, respondent is sustained in his determination that petitioner was in existence during the base period, and is, therefore, not entitled to relief under section 722 (c).

Reviewed by the Special Division.

> *Decision will be entered under Rule 50 in Docket No. 31942.*
>
> *Decision will be entered for the respondent in Docket No. 32302.*

---

MURDOCK, *J.*, dissenting: I agree with the majority on the Flotill Products, Inc., case, but I do not agree that Flotill Sales Corporation should be denied relief for the reasons given in the opinion.